IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN M. BYBEL, M.D. | : | No. |
| Plaintiff, | : | |
| vs. | : | |
| METROPOLITAN LIFE INSURANCE COMPANY; LINCOLN NATIONAL LIFE INSURANCE COMPANY, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## COMPLAINT

1. This action revolves around Defendants' denial of disability benefit payments under an "own occupation" policy.

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter under 28 U.S.C. §1332 because there is a diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. At all times material to this Complaint and the causes of action stated herein, Defendants have done business in Pennsylvania and have had contacts with the Commonwealth sufficient to establish personal jurisdiction over them pursuant to 42 Pa. C.S.A. §5322.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (c) because Defendants are subject to personal jurisdiction in this district.

## Parties

5. Plaintiff, Ann Marie Bybel, M.D., is an adult individual residing at 120 Windover Turn, Lancaster, Pennsylvania 17601.

6. Defendant Metropolitan Life Insurance Company ("MetLife") is a New York corporation with its principal place of business in New York City. Defendant is licensed to transact business in the Commonwealth of Pennsylvania and regularly conducts business there.

7. Defendant Lincoln National Life Insurance Company ("Lincoln National") is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. Defendant is licensed to transact business in the Commonwealth of Pennsylvania and regularly conducts business there.

## Operative Facts

8. Plaintiff is a board-certified, university-trained Obstetrician-Gynecologist ("OB/GYN") who, starting in 1991, practiced the full complement of services as an OB/GYN in Pennsylvania.

9. Plaintiff has a Disability Income Insurance Policy with Lincoln National ("the policy"), which she purchased in 1991.

10. Over the past eighteen years, Plaintiff has paid her premiums on time, the total of which is now more than $37,000.

11. Defendant MetLife has serviced all of Lincoln National's individual disability income insurance policies, including its policy with Plaintiff, since 1999.

2

12. In all actions that it has taken with respect to Plaintiff's policy, MetLife has acted as the authorized agent of Lincoln National.

13. Plaintiff's policy is an "own occupation" policy, for which Plaintiff pays an additional premium.

14. Plaintiff's policy obligates Lincoln National to pay Plaintiff "total disability" benefits if "because of Injury or Sickness:

   a. [Plaintiff] cannot do the main duties of [her] Occupation; and

   b. [Plaintiff is] under a Physician's Care."

15. Plaintiff's policy obligates Lincoln National to pay Plaintiff "residual disability benefits" after a ninety-day elimination period if "due to the continuation of [an] Injury or Sickness:

   a. [Plaintiff's] Current Monthly Income is 80% or less of [her] Prior Monthly Income; and

   b. [Plaintiff is] under a Physician's Care."

16. Plaintiff's policy includes a lifetime total disability benefits rider, for which she pays an additional premium, and a waiver of premium provision that eliminates the need to pay premiums that would otherwise be due during periods of disability and requires the refund of any premiums paid during such periods.

17. "Occupation" is defined as "the occupation ... in which You are engaged at the start of Your disability."

18. Plaintiff's occupation has at all relevant times been that of an OB/GYN, the main duties of which include, *inter alia:*

3.

a. independently delivering babies by whatever means necessary (natural, cesarean, forceps-assisted, vacuum-assisted);

b. independently performing gynecological surgeries; and

c. on-call work, which requires the ability to independently perform the delivery and surgical functions described above.

19. All of these duties collectively occupied two-thirds of Plaintiff's pre-injury work time.

20. All of these duties can involve repetitive and prolonged reaching, pushing and pulling.

21. Vacuum-assisted birth extractions can also require a physician to exert up to or more than fifty pounds of force.

22. On December 23, 2005, Plaintiff injured her right (dominant) shoulder while performing a birth procedure, and since then has been under the care of physicians for that injury.

23. Plaintiff had surgery on the shoulder on September 21, 2006.

24. Plaintiff has undergone extensive physical therapy for the injury, before and after the surgery.

25. Despite the surgery and physical therapy, Plaintiff has not regained the strength in her right shoulder and arm necessary for Plaintiff to handle the demands of independently delivering babies and performing surgeries.

26. Since Plaintiff cannot independently deliver babies or perform surgeries, she also cannot perform on-call OB/GYN responsibilities, because one

4

cannot predict when a call will involve deliveries or surgeries that Plaintiff cannot independently perform.

27. Three different doctors have said, in writing, that Plaintiff cannot perform the main duties of her occupation because of her injury.

28. On March 15 and 16, 2007, Plaintiff underwent a two-day Functional Capacity Evaluation ("FCE") at her former employer's request, which evaluation found "significant deficits" in the strength and endurance of her right shoulder, and determined that her functional abilities were only in the sedentary work category for waist to overhead lifting, and in the light work category for all else.

29. On April 18, 2007 and July 2, 2008, Plaintiff also had two Independent Medical Examinations ("IME"), first at the request of her former employer, and then at the request of her workers compensation carrier.

30. The physician who performed the IME—a board-certified, published orthopedic surgeon who has additional sub-specialty training in surgery of the upper extremity—has concluded that Plaintiff "is not capable of performing her regular job duties which include vacuum deliveries which would require heavy pulling or lifting greater than 50 pounds."

31. The group through which the IME surgeon practices, The Philadelphia Hand Center, has opined that Plaintiff "cannot perform the essential functions of her job, and cannot do any vacuum deliveries and surgeries. . . . There is no reasonable accommodation that would allow her to perform the essential functions of her job."

32. The Philadelphia Hand Center also ranked Plaintiff a five (on a scale of one to five, with five being the most imminent) in terms of posing a present and significant risk to the safety of herself or patients if she were to try to perform her essential work functions.

33. Plaintiff also treated with an orthopedic surgeon, who since August 21, 2006 has ordered Plaintiff either to discontinue work, or to work reduced hours with restrictions that enable her to perform only office work and administrative tasks.

34. On February 4, 2007, Plaintiff's salary was reduced by 59% because of her injury and its related work restrictions.

35. On July 25, 2007, Plaintiff was terminated because of her injury.

36. Plaintiff has been unable to obtain comparable alternate employment as an OB/GYN because of her injury.

37. Plaintiff has been granted workers compensation benefits because of her injury.

38. Plaintiff has been granted benefits from her employer-sponsored group disability policy because of her injury.

39. Plaintiff has given MetLife copies of the medical records concerning her injury, including the conclusions of the doctors who have evaluated her because of that injury and correspondence from her employer about the injury and her employment status.

40. Despite all of this evidence, MetLife, on behalf of Lincoln National, has approved Plaintiff only for "residual" disability benefits (and reimbursement of

premiums), and only for six months, from September 21, 2006 (the date of her surgery) through March 15, 2007.

41. Lincoln National, through MetLife, has taken the position that from March 15, 2007 on—while Plaintiff has been restricted from lifting, pushing or pulling more than thirty to thirty-five pounds, and from independently delivering babies and performing gynecological surgeries and on-call work—Plaintiff has not been restricted from performing the main duties of her occupation and thus is not entitled to receive any disability payments (residual or total).

42. Lincoln National, through MetLife, has taken this position based solely on the purported opinion of an unidentified OB/GYN who has never spoken to, met with or examined Plaintiff, and without providing any details or rebuttal to the specific points made by the number of qualified doctors who have examined Plaintiff and found her unable to independently handle deliveries, surgeries or on-call work.

43. Lincoln National, through MetLife, has taken this position despite the fact that since September 1, 2007, Plaintiff has not worked in any capacity and has not received payments from any source other than workers compensation and the group disability insurance policy of her former employer.

44. In addition, for the first year and a half after Plaintiff made her claim, Lincoln National, through MetLife, ignored the "Own Occupation" rider to Plaintiff's policy, and evaluated Plaintiff's claim based on the Total Disability definition in the main policy, which MetLife knew did not apply.

45. Lincoln National, through MetLife, did not begin evaluating Plaintiff's claim under the correct definition of total disability until Plaintiff found a copy of the "Own Occupation" rider in her records and advised MetLife that she was aware of the rider.

## COUNT I
## PLAINTIFF V. LINCOLN NATIONAL
## BREACH OF CONTRACT – TOTAL DISABILITY BENEFITS

46. Plaintiff incorporates by reference all preceding paragraphs as if set forth in full.

47. Plaintiff's insurance contract with Lincoln National obligates it to:

   a. pay Plaintiff monthly Total Disability benefits if because of injury or sickness, she cannot do the main duties of her occupation and is under a physician's care; and

   b. refund any premiums that are paid during a period of Total Disability, and waive the payment of any premiums that become due while the Total Disability continues.

48. Because of her injury, Plaintiff has not been able to do the main duties of her occupation, and has been under a physician's care, since at least September 1, 2007.

49. Despite this, Lincoln National has refused to pay Plaintiff the monthly Total Disability benefits called for under her contract of disability insurance with Lincoln National, has failed to refund the premiums that Plaintiff paid during her

8

period of Total Disability, and has continued to require Plaintiff to pay additional premiums while her Total Disability continues.

50. These breaches of its contractual obligations have caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff requests judgment in her favor and against Lincoln National for: (a) compensatory damages equal to the Total Disability benefits that Plaintiff should have been paid from September 21, 2006 until judgment is entered, plus the premium payments that should have been refunded to Plaintiff during that period, plus interest; and (b) an injunction ordering Lincoln National to continue to pay Plaintiff monthly Total Disability benefits, plus interest, until her disability ends or she dies, and to waive the payment of premiums during that period.

## COUNT II
## PLAINTIFF V. LINCOLN NATIONAL
## BREACH OF CONTRACT – RESIDUAL DISABILITY BENEFITS

51. Plaintiff incorporates by reference all preceding paragraphs as if set forth in full.

52. In the alternative, Plaintiff's insurance contract with Lincoln National obligates it to:

   a. pay Plaintiff monthly Residual Disability Benefits if because of injury or sickness, she is under a physician's care and her current monthly income is 80% or less of her prior monthly income; and

9

  b. refund any premiums that are paid during a period of Residual Disability, and waive the payment of any additional premiums that become due while the Residual Disability continues.

53.  Because of injury, since September 1, 2007, Plaintiff has been under a physician's care and has received no monthly income (except for payments from workers compensation and the group disability insurance policy of her former employer, which is not "income" for purposes of Plaintiff's insurance policy with Lincoln National).

54.  Despite this, Lincoln National has refused to pay Plaintiff the monthly Residual Disability benefits called for under her contract of disability insurance with Lincoln National during that period, has failed to refund the premiums that Plaintiff paid during her period of Residual Disability, and has continued to require Plaintiff to pay additional premiums while her Residual Disability continues.

55.  These breaches of its contractual obligations have caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff requests judgment in her favor and against Lincoln National for: (a) compensatory damages equal to the Residual Disability benefits that Plaintiff should have been paid from September 1, 2007 until judgment is entered, plus the premium payments that should have been refunded to Plaintiff during that period, plus interest; and (b) an injunction ordering Lincoln National to continue to pay Plaintiff monthly Residual Disability benefits, plus interest, until

her disability ends or she reaches age sixty-five (65), whichever comes first, and to waive the payment of premiums during that period.

## COUNT III
## PLAINTIFF V. LINCOLN NATIONAL
## BAD FAITH

56. Plaintiff incorporates by reference all preceding paragraphs as if set forth in full.

57. Plaintiff is an insured of Lincoln National.

58. Lincoln National, through MetLife, had no reasonable basis to evaluate Plaintiff's claim based on the Total Disability definition in the main policy, rather than under the "Own Occupation" rider, until Plaintiff found the rider on her own, and it knew or recklessly disregarded that lack of reasonable basis.

59. Lincoln National, through MetLife, also has had no reasonable basis to deny Plaintiff's claims for total or residual disability benefits, and it has known or has recklessly disregarded that lack of reasonable basis.

WHEREFORE, Plaintiff requests judgment in her favor and against Lincoln National for all damages provided by 42 Pa. C.S.A. §8371, including, without limitation, punitive damages, attorneys' fees, costs and interest.

## COUNT IV
## PLAINTIFF V. METLIFE
## TORTIOUS INTERFERENCE WITH CONTRACT

60. Plaintiff incorporates by reference all preceding paragraphs as if set forth here in full.

61. MetLife has intentionally interfered, without privilege or justification, with the contract of insurance between Plaintiff and Lincoln National, and specifically with the payment of disability benefits to which Plaintiff is entitled under that contract.

62. MetLife's actions have been in willful and reckless disregard of Plaintiff's rights under her contract with Lincoln National.

63. MetLife's interference with Plaintiff's contract with Lincoln National has caused Plaintiff to suffer financial damages, in the form of lost disability benefits and refunds and waivers of premium, as well as substantial and foreseeable emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant MetLife for compensatory damages in excess of $150,000 and punitive damages.

JOSEPH F. RODA
Atty. I.D. No. 20615

MICHELE S. BURKHOLDER
Atty. I.D. No. 78063

RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

*Attorneys for Plaintiffs*

DATED: February 10, 2009