**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANN M. BYBEL, M.D., | : | |
| Plaintiff | : | Civil Action No. 09-0570-LS |
| | : | |
| v. | : | |
| | : | |
| LINCOLN NATIONAL LIFE INSURANCE | : | |
| COMPANY, | : | |
| Defendant | : | |
| | : | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Lincoln National Life Insurance Company ("Lincoln"), pursuant to Fed. R. Civ. P. 56(c)(1)(C) and Local Rule 7.1, hereby files its Reply Memorandum in Support of Motion for Summary Judgment. As discussed herein, Lincoln[1] is entitled to summary judgment in its favor on all of Bybel's claims.

**I.      BYBEL HAS NOT CREATED A GENUINE ISSUE OF MATERIAL FACT SUFFICIENT TO PRECLUDE SUMMARY JUDGMENT IN FAVOR OF LINCOLN ON THE ISSUE OF TOTAL AND RESIDUAL DISABILITY.**

In attempting to construct a factual dispute sufficient to defeat summary judgment, Plaintiff spends virtually all of her 25 page response erecting a straw man for knocking down, vigorously arguing that the evidence establishes she is unable to perform certain deliveries or lengthy surgeries due to her shoulder injury. Unfortunately for Plaintiff's position, however, Lincoln conceded these facts for purposes of its summary judgment motion, arguing, instead,

---

[1]      Lincoln notes that throughout Plaintiff's Response Brief, she refers to the Defendant as MetLife; however, as set forth in footnote 1 of the Motion for Summary Judgment [D.E. 57], MetLife was previously dismissed from this action by stipulation [D.E. 11], and only Lincoln remains as a defendant.

that there remain "main duties" of her occupation she is able to perform and, therefore, her "total disability" claim must fail under the language of her Lincoln policy (the "Policy").

Plaintiff's continuing ability to perform some, if not all, of her main duties is established beyond peradventure in the record. In addition to the obvious fact that she was offered a full-time job (at $148,000 per year plus bonus) performing the same OB/GYN office duties she was performing 32 hours per week prior to the onset of her shoulder problems, Plaintiff's own retained OB/GYN expert, Dr. Arnold Cohen, admitted she is, and has been, capable of performing such duties since her return to work after shoulder surgery :

> Q.  What do you think she is employable as with regard to the field of OB-GYN?
> A.  I feel she could do office gynecology.   She could do prenatal care without obstetrical deliveries.
> Q.  Could she do post?
> A.  Postpartum care?
> Q.  Yes.
> A.  Postoperative care, yes.
> Q.  In other words, she could anything in the office required of an OB-GYN; is that fair?
> A.  I would say that's pretty fair.
> Q.  Are you aware of whether she was offered a job doing just that?
> A.  Yes.
> Q.  A complete office job?
> A.  Yes.
> Q.  As an OB-GYN?
> A.  Yes.
> Q.  Are you, do you have an understanding as to whether she accepted that job or not?
> A.  Yes.
> Q.  What's your understanding of what happened with that?
> A.  She did not accept that.

Deposition of Dr. Arnold Cohen, Pages 57:23 to 58:23.[2]

Dr. Cohen also testified that Bybel always could perform at least one or more of her main

---

[2]   A copy of Dr. Cohen's deposition is being filed with this memorandum, under seal.

duties:

> Q.  You would agree that at all times that you have looked at, after her return to work, she was capable of performing at least one or more of her main duties as an OB-GYN; correct?

> A.  Yes.

Cohen Deposition, at 94:10 to 94:14.

Dr. Cohen testified that Plaintiff could deliver a spontaneous vaginal delivery, deliver a normal patient with a cesarean section, perform office gynecology, perform prenatal care without obstetrical deliveries, and perform post partum care.  *See* Cohen Transcript at p. 57:9-12; 23-24 and p. 58:1-7.  Dr. Cohen testified that Plaintiff was able to perform a complete office job as an OB/GYN.  *Id.* at p. 58:8-17.  Moreover, Dr. Cohen also testified that he was aware of OB/GYNs that solely performed gynecology and that it was not unusual to do so.  *Id.* at p. 19:8-17 and p. 20:1-4.  Bybel confirmed that office procedures include biopsies, removal of intrauterine devices, and invasive ultrasounds.  *See* Bybel Deposition Transcript at p. 82:17-24 and p. 83:1-5.[3]  Simply put, Plaintiff's attempt to re-cast her main occupational duties as *only* those rare deliveries and lengthy surgeries of which she complains is belied by the record and the testimony of her own OB/GYN expert.

Plaintiff's "flight attendant" analogy could be useful, *if* Plaintiff used the facts of this case rather than those not found in our record.  If one were to use the case at bar, the flight attendant who could not operate the "emergency slide" on board the aircraft was previously employed not only in the aircraft, but also at the gate 32 hours per week, performing inarguably important duties checking in passengers, performing security checks, re-routing passengers, etc.  After his/her injury, the airline offered her a full-time job at the gate, which she rejected for non-medical reasons.  If those facts, which match Plaintiff's case, are used, the flight attendant would

---

[3]  A copy of Dr. Bybel's deposition transcript was previously filed with the Court.

also fail to qualify for "total disability" under the Policy. An insured's occupational duties must be examined as a whole.

In sharp contrast to her memorandum's lengthy presentation of evidence on matters not in dispute, Plaintiff is silent on the issue of how the residual language contained within the policy applies to her claim. But ignoring the language does not make it disappear. And this is a fatal flaw in her argument. When disability policies, such as Plaintiff's, contain total and residual disability provisions, the policy must be read as a whole to give effect to all provisions. To do otherwise renders the residual disability provisions meaningless.

In *Russell v. Paul Revere Life Insurance Company,* 288 F. 3d 78 (3rd Cir. 2002), the court was faced with a claim for total disability under a policy which contained both total and residual disability provisions. Although the plaintiff acknowledged that he could perform some of the important duties of his occupation, he argued that he was totally disabled under the policy as he was unable to perform one of the main duties of his occupation. *Id.* at 82. In construing the provisions of the policy, the court concluded that when taking the policy as a whole, the policy provisions disclosed an "expectation that the insured will continue to work in some capacity in his occupation unless the insured cannot perform any of the important duties of his job." *Id.* Accordingly, the Court concluded that "the policy language places upon the employee the initial burden to demonstrate that he or she can not perform **_any_** of the important duties of his position." *Id.* (emphasis added).

Similarly, in *Grossman v. Wachovia Corporation*, 2005 WL 2396793 (E.D. Pa. 2005), a plaintiff argued that if she could perform some, but not all, of her occupational duties she was entitled to total disability benefits. In finding the *Russell* holding instructive, the court found that, as the policy also had a residual disability clause, it is logical that if an individual can

perform some but not all duties of their own occupation they should be considered partially disabled, and if no duties can be performed the insured is totally disabled. *Id.* at *2, n.2. *See also, DeCurtis v. Metropolitan Life Ins. Co.,* 2006 WL 1330112 (M.D. Pa. 2006) (in the Third Circuit, in order to obtain total disability benefits a plaintiff has a burden of proving that he cannot perform any of the substantial and material duties of his occupation); *Helus v. Equitable Life Assurance Society of the United States,* 309 F. Supp. 2d 1170 (N.D. Cal. 2004) (where total and residual provisions are present, the proper definition of total disability is the inability to perform all duties of the occupation); *Dym v. Provident Life & Accident Insurance Co.,* 19 F.Supp.2d 1147 (S.D. Cal. 1998) (where an insured could still engage in one of the substantial and material duties of his occupation, the insured was not totally disabled under the plain meaning of the policy provisions as the policy provided residual disability coverage for an insured unable to perform one or more of his substantial and material duties); *Yahiro v. Northwestern Mutual Life Insurance Co.,* 168 F.Supp.2d 511, 517-18 (D. Md. 2001) (court concluded that because the principal duties of the insured's occupation included more than just performing surgery, and since there was no claim that the insured could not do those other duties, "the only conclusion under the terms of the policies is that Plaintiff is partially disabled.")**.**

Rather than even address such cases or issues, Bybel instead cites cases purportedly supportive of her position, but which are inapposite and distinguishable. Bybel cites *Pomerance v. Berkshire Life Ins. Co.,* 654 S.E. 2d 638 (Ga. App. 2007) for the proposition that delivering babies, performing surgeries, and performing on call are the main duties of an OB/GYN.[4] *Pomerance* addressed whether total disability required that an insured be unable to perform all of

---

[4] As an initial note, this does not appear to be a central holding of the case, rather, the court noted that the plaintiff identified his occupational duties and activities in order of importance as delivering babies, surgeries, c-sections, office visits, making rounds, and finally, being on call.

the material and substantial duties of his occupation, or in the alternative, the inability to perform the vast majority of the material and substantial duties of the occupation. The court subsequently found that total disability under the terms of the policy in that case required the inability to perform the vast majority of the material and substantial duties of the occupation. The court further held that factual questions existed as to whether the plaintiff was unable to perform the vast majority of his material and substantial duties. In the instant case, there are no such factual issues that might preclude summary judgment. As set forth above, Bybel's own testimony, as well as that of her retained OB/GYN expert, clearly establish she was capable of performing full time office work, including office based surgeries. Moreover, her own employer, recognizing that Bybel could continue to maintain an office based OB/GYN practice, offered her employment, which Bybel rejected for non-medical reasons. Given this evidence, it is clear that Plaintiff cannot maintain any argument that she is incapable of performing the vast majority of the main duties of her occupation. Accordingly, *Pomerance* does not apply here.

Bybel also cites to *Weum v. Mutual Benefit Health & Accident Ass'n.,* 54 N.W. 2d 20, 31 (Minn. 1952) and *Lasser v. Reliance Standard Life Ins. Co.,* 344 F. 3d 381, 386-387 (3rd Cir. 2003) for further explanation as to the most important duties of an OB, and the material duties of an orthopedic surgeon. Again, these cases can be easily distinguished. In *Weum*, the court was faced with what was essentially a future loss, i.e., the loss of the plaintiff's practice in the future, and identified the "most important" duties of an obstetrician. Here, the policy at issue does not provide payment for the inability to perform the "most important" singular duty of one's occupation. Rather, in order to obtain "total disability" benefits, Plaintiff has the burden of proving that she is unable to perform the main duties of her occupation. As discussed above, even accepting Plaintiff's alleged restrictions as true, she remains able to perform virtually all of

her main pre-disability occupational duties.  As such, *Weum* is inapposite to the present case.  In addition, in *Weum,* the court was construing a policy significantly different that Plaintiff's here, as it did not contain a residual disability provision.

With respect to *Lasser*, that court was first required to determine what was the insured's regular occupation as the policy left the term undefined.  In the present case, there is no question as to what encompasses Plaintiff's regular occupation.  As set forth in Lincoln's Motion for Summary Judgment, Plaintiff's own occupation is deemed to be her regular occupation.  In addition, in finding total disability, the *Lasser* court noted that the insured there suffered a 50% decline in earnings due to his inability to perform call duties and surgery.  The court stated that "this substantial earnings decline lays out as little else can the materiality of those activities to his regular occupation." *Id.* at p. 387.  Here, the fact that Bybel's employer offered her a job paying $148,000 plus a bonus lays out as little else can the materiality of those activities to her regular occupation.  If the duties were not material, why her employer be willing to pay such a salary for performance of incidental duties?

Plaintiff also cites to *Kaelin v. Tenet Employee Benefit Plan,* 1007 WL 4142770 (E.D. Pa. Nov. 21, 2007) and *Seitz v. Metropolitan Life Ins. Co.,* 433 F. 3d 647 (8th Cir. 2006) arguing that disability must be based upon what she was actually doing prior to disability and not an accommodation job offered after she became disabled, and that when disability is based on an own occupation provision, the inability to perform some duties is insufficient to deny benefits.  In *Kaelin*, the court was presented with a dispute as to the definition of "regular occupation."  The court determined that the "usual work that the insured is performing before the onset of disability" constituted an insured's regular occupation.  *Id.* at *5.  Under the facts of the case, the court determined that the insured's performance of office visits was not a material duty of the

insured's job as the insured spent an average of less than 10 hours per week seeing patient. *Id.* at *9. Moreover, the insured's billings for office visits was a miniscule portion of his total billings. *Id.* Here, in the present case, the circumstances are quite different. Bybel's own testimony establishes that from a financial standpoint, her practice was split 50/50 between obstetrical work and gynecological services. In addition, Plaintiff's claim form indicates that she spent at least 32 hours per week performing office based work. As such, her office duties were far from miniscule and were pertinent duties to her occupation. Further, as set forth above, Bybel's own expert testified that when Plaintiff returned to work following her surgery, she was capable of performing at least one or more of her main duties of her occupation. Accordingly, the *Kaelin* holding is not applicable here.

With respect to the *Seitz* case, as with the *Weum* case discussed *supra*, the policy at issue did not contain a residual disability clause providing benefits where an insured could still perform some of the duties of their occupation. As discussed above, when policies contain both total and residual disability provisions, the provisions are read as a whole to give effect to each provision. As courts construing these policies have held that the ability to perform some occupational duties negates total disability, the *Seitz* holding is inapplicable to this case.

Finally, Plaintiff cites to *Fontaine v. Provident Mutual Life Ins. Co. of Philadelphia,* 10 Fed. Appx. 415 (9th Cir. 2001)[5] in support of her claim that marketability of an insured is relevant to a determination of total disability, and that her alleged inability to find work as an OB/GYN is evidence of her inability to perform the material duties of her occupation. In advocating this position, Plaintiff seemingly ignores the fact that she **did** find work as an

---

[5]    Lincoln is aware that Plaintiff has cited the case of *Fleishman v. General Am. Life Ins. Co.,* 839 A. 2d 1085 (Pa. Super. Ct. 2003) for the argument that total disability does not require an insured to be a helpless invalid. However, Lincoln has not argued that Plaintiff is required to

OB/GYN in light of her supposed restrictions. Plaintiff's own employer offered her a position accommodating her restrictions and limitations but she chose not to accept the offer. While she goes to great pains to explain her "good reasons" for not taking the offered job, it is only important that none of her reasons were health related, which is the area of inquiry here. Plaintiff cannot refuse a job in her same occupation and then claim that her marketability supports a finding of total disability. Accordingly, the *Fontaine* case has no bearing on this matter.

Here, the undisputed evidence clearly establishes that Plaintiff is unable to prove that she cannot perform any of the main duties of her occupation. Under these circumstances, as Plaintiff remains able to perform some of her main duties of her occupation, at best, she could be considered residually disabled. Therefore, Plaintiff's total disability claim can properly be disposed of as a matter of law.

Nor, as a matter of law, is Bybel entitled to residual disability benefits. In her opposition memorandum, Bybel simply maintains that Lincoln's arguments are "jury arguments" and concedes the fact that she was offered a position with her former employer at a lesser salary. However, her concession of the job offer makes clear the fact that not only is Bybel capable of performing at least one or more of the main duties of her "predisability" occupation, she had the opportunity to earn an income while performing those duties. Because she willfully chose to cease working, suffering a complete loss of income, Bybel cannot now claim that she is entitled to recover residual disability benefits. Bybel makes no attempt to deal with Lincoln's cases or argument on the issue of damages, thereby conceding their correctness. Therefore, Plaintiff's claim for residual benefits can properly be adjudicated on summary judgment.

_____ (cont'd.)
be completely helpless in order to receive total disability benefits.

**II.    THERE ARE NO ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT IN FAVOR OF LINCOLN ON BYBEL'S BAD FAITH CLAIM.**

Lastly, summary judgment must be entered on Bybel's "bad faith" claim.  As discussed more fully in Lincoln's Motion for Summary Judgment, for bad faith claims, a plaintiff must prove by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy, or recklessly disregarded its lack of a reasonable basis in denying the claim.  *American Franklin Life Insurance Co. v. Galati,* 776 F. Supp. 1054, 1064 (E.D. Pa. 1991).

Here, the undisputed evidence clearly establishes that Plaintiff's own OB/GYN expert – Dr. Cohen -- testified that she was capable of performing one or more of the main duties of her occupation, thus inherently supporting the reasonableness of Lincoln's claim decision at the time it was made.  When reading the policy as a whole, and as held in the *Russell* case, this ability to perform occupational duties negates a finding of total disability as the policy provides for the payment of residual benefits where an insured can continue working in their occupation in some capacity.  Under these circumstances, it is abundantly clear that Lincoln had a reasonable basis for denying Plaintiff's claim for total disability benefits.  Therefore, Lincoln cannot be held to have operated in bad faith as a matter of law – even if the decision ultimately was incorrect. Similarly, with respect to Plaintiff's claim for residual disability benefits, the evidence is clear that Plaintiff does not have a valid claim as she elected not to return to work, and rejected an offer of employment.  Thus, Bybel's loss of income is not due to her purported disability, and under the language of the policy, residual benefits are not payable.  Once again, under these facts, Lincoln cannot be found to have operated in bad faith and Plaintiff's claim should be denied as a matter of law.  Summary judgment therefore should be entered in Lincoln's favor with respect to Bybel's claim of bad faith.

As set forth above, despite Plaintiff's attempt to manufacture a genuine issue of material fact to oppose summary judgment, the undisputed record evidence establishes that Plaintiff cannot prevail on her claims of total disability, residual disability and bad faith. Accordingly, Lincoln's Motion for Summary Judgment should be granted in its entirety and judgment should be entered against Bybel as a matter of law.

## CONCLUSION

For the foregoing reasons, and those set forth in its Motion for Summary Judgment, Defendant, Lincoln National Insurance Company, respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment against Plaintiff, Ann M. Bybel, M.D., and award such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ John E. Meagher*
John E. Meagher, Esq.
Florida Bar No. 511099
*(Admitted Pro Hac Vice)*
SHUTTS & BOWEN LLP
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
Tel: 305-358-6300
Fax: (305) 381-9982
jmeagher@shutts.com

and

Douglas F. Johnson, Esq.
PA Atty No. 40036
**EARP COHN, P.C.**
1725 Spruce Street
Philadelphia, PA 19103-6149
Tel: (215) 963-9520
Fax: (215) 963-9620
E-Mail: dfjohnson@earpcohn.com

*Attorneys for Defendant Lincoln*
*National Life Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically on this __13th__ day of July, 2010 and is available for viewing and/or downloading from the Court's ECF system. Electronic service will be made via ECF notification upon the following:

**Joseph Roda, Esq**.
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
*Attorney for Plaintiff*

**Michele S. Burkholder, Esq**.
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
*Attorney for Plaintiff*

*s/ John E. Meagher*_____
John E. Meagher, Esq.
Florida Bar No. 511099
*(Admitted Pro Hac Vice)*
SHUTTS & BOWEN LLP
201 South Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
Tel: 305-358-6300
Fax: (305) 381-9982
jmeagher@shutts.com

MIADOCS 4502154 3

12